J-S17027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :             PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| ANTHONY H. CHANCE | : |
| | : |
| Appellant | : No. 177 EDA 2025 |

Appeal from the PCRA Order Entered December 10, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-1110051-1987

BEFORE:  PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JULY 17, 2026**

Appellant, Anthony H. Chance, who is serving a life sentence for first-degree murder, appeals from an order denying relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

Between 9:00 and 10:00 p.m. on June 18, 1987, at the intersection of 24th Street and Ridge Avenue, Isaac Wilson, the victim, was walking with Jeffrey McCants, Isaac McCants, Terry Bellamy, and D'Angelo White.  Jeffrey McCants noticed Appellant approaching the group.  He grabbed Appellant's chain necklace, and the two got into a physical altercation that lasted approximately two minutes.  Appellant ran away.  (N.T. 10/12/1988, at 46, 109-15; 10/13/1988, at 190, 215, 220-21, 277-80).

Appellant ran to his house and retrieved his .22-caliber rifle.  He returned and chased Jeffrey McCants and the victim up the street without

_____

[*] Retired Senior Judge assigned to the Superior Court.

catching up with them. Appellant walked back to his home, threatening to kill Jeffrey McCants as he passed D'Angelo White. N.T. 10/12/1988, at 114-17, 142; 10/13/1988, at 190-94, 202-03, 222. When Appellant returned home, he met with Ernest Hammond. Appellant packed the .22-caliber rifle and a table leaf into a duffle bag. At around 11:50 p.m., Appellant called an unlicensed cab to drive him and Ernest Hammond to the intersection of 29th and Girard Streets, near the victim's residence. Appellant and Ernest Hammond carried the bag together to the intersection and placed it on a newsstand. The victim walked up the street, and Appellant retrieved the rifle, approached the victim, asked where his chain was, and fired a shot before the victim could respond. The victim fell, and Appellant stood over him and fired three more shots. N.T. 10/13/1988, at 222-33.

The victim suffered four gunshot wounds to the chest, arm, pelvis, and thigh. Police officers transported the victim to Hahnemann Hospital, where he died. N.T. 10/12/1988, at 97-99, 106-07; 10/13/1988, at 311. Appellant fled, returning to his home and calling another unlicensed cab. The cab drove him to the Girard Avenue bridge near the Philadelphia Zoo, where Appellant threw the rifle into the Schuylkill River. N.T. 10/14/1988, at 414-15.

Police recovered four .22-caliber fired cartridge casings ("FCCs"), all of which were the same brand. N.T. 10/14/1988, at 354. Over the course of the investigation, detectives interviewed Jeffrey McCants, Isaac McCants, D'Angelo White, Shawn White, Terry Bellamy, and Ernest Hammond. On September 9, 1987, police arrested Appellant, who made a statement

confessing to the shooting. He recounted that he was walking down the street, and a group of men approached him and stole his chain. The only person he knew in the group was the victim. He ran to his house and returned with his .22-caliber rifle, but the group was gone. He went home again, put his rifle into a bag with a table leaf to support the rifle, and told Ernest Hammond he was going to 29th Street and Girard Avenue, where the victim lived, to find his chain. He called an unlicensed cab and arrived at 29th and Girard and saw the victim shortly afterwards. The victim walked up to him, and Appellant recited as follows:

> I told [the victim] I didn't want no problems, just to give me the chain back. [The victim] said to me what makes you think you're going to get your chain back. [The victim] told me if I wanted my chain back that had (sic) to go and find [Jeffrey McCants] and take it back. As [the victim] was saying that, I was starting to get my anger back. When [the victim] said that, I just took the rifle out of the bag. He said to me I was not going to shoot nobody. That is when I had pulled the trigger. [The victim] fell and I ran.

Appellant admitted that he disposed of the gun in the Schuylkill River. N.T. 10/14/1988, at 378-84, 390-91. Appellant tried to claim that he was aiming for the victim's legs and did not intend to kill him but admitted that he shot the victim four times. Appellant also admitted that he was so angry at Jeffrey McCants for stealing his chain that he would have shot him if he saw him. N.T. 10/14/1988, at 392, 394, 411.

Appellant's three-day waiver trial began on October 12, 1988. The Commonwealth presented testimony from D'Angelo White, Terry Bellamy, Ernest Hammond, and Isaac McCants, along with additional witnesses and

- 3 -

numerous Philadelphia police personnel. White, Bellamy, and McCants testified that Appellant and Jeffrey McCants got into a physical altercation because Jeffrey took Appellant's chain. Neither White, Bellamy, nor Isaac witnessed the shooting. Ernest Hammond was an eyewitness to the shooting and described how Appellant fatally shot the victim while he lay wounded on the ground. N.T. 10/12/1988, at 112-14; 10/13/1988, at 190-93, 231-33, 277-80. Former Detectives Santiago and Jastrzembski, whose unrelated alleged misconduct was at issue in the PCRA petition, did not testify at the trial.

Appellant did not dispute that he was the killer but argued for third-degree murder and testified in his own defense. He also maintained that the gunshot pattern was not one shot followed by three additional shots, but instead that he pulled the trigger once and four shots fired. N.T. 10/14/1988, at 410-12.

On October 14, 1988, Judge Stiles found Appellant guilty of first-degree murder and possession of an instrument of crime. The court immediately sentenced Appellant to a mandatory term of life imprisonment.

On November 15, 1989, this Court affirmed Appellant's judgments of sentence. The Pennsylvania Supreme Court denied review on September 21, 1990. Appellant subsequently filed multiple unsuccessful PCRA petitions. On February 5, 2020—almost three decades after his judgment of sentence became final—Appellant filed the PCRA petition at issue here. Appellant retained counsel and filed an amended petition claiming the new fact

- 4 -

exception to the PCRA's time provisions, in particular alleging after-discovered evidence and alleged **Brady**[1] material. Appellant claimed that he recently discovered new witness Shawn White (hereinafter Shawn), brother of trial witness D'Angelo White (who by then was deceased), who would testify that police detectives assaulted and coerced D'Angelo White into providing a false statement to detectives. Amended PCRA Petition, 7/7/2022, at 4-6.

D'Angelo White had provided two statements to homicide detectives, and former Detective Santiago took one of the statements. Based on Detectives Santiago's and Jastrzembski's misconduct in unrelated cases, Appellant alleged that former Detective Santiago coerced D'Angelo into providing a false statement.

On October 27, 2022, the Commonwealth filed a motion to dismiss. The PCRA court held an evidentiary hearing on December 9, 2024, during which Shawn testified that D'Angelo told him that detectives beat and coerced him to provide a false statement. He added that D'Angelo was with him on the night of the shooting and that neither of them witnessed Appellant's and Jeffrey McCants' fight over the chain. N.T. 12/9/2024, at 39, 56-62. The PCRA court found this testimony incredible. N.T. 12/9/2024, at 172-76; PCRA Court Opinion, 7/2/25, at 3. On December 10, 2024, the PCRA court formally dismissed Appellant's petition. This appeal followed.

_____

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

On August 13, 2021, the Commonwealth indicted former Detectives Santiago and Jastrzembski for perjury and false swearing in unrelated cases. *See Commonwealth v. Santiago*, CP-51-CR-0003402-2022; *Commonwealth v. Jastrzembski*, CP-51-CR0003400-2022. In 2026, former Detective Santiago was convicted of perjury and false swearing, and former Detective Jastrzembski was convicted of false swearing.

Appellant raises the following issues in this appeal:

1. Where the brother of a key Commonwealth witness came forward and contacted the Appellant and advised that the statement of his brother, a key Commonwealth witness leading to Appellant's conviction, was coerced by Detectives who not only committed misconduct during the time period this statement was taken, and this misconduct was suppressed by the Commonwealth, did this constitute a *Brady* violation compelling the grant of a new trial where the misconduct led to a first-degree murder conviction?

2. Did the same factors in question one compel the grant of a new trial based on newly discovered evidence?

3. Did the lower court commit misconduct by essentially taking over the questioning of a witness at the evidentiary hearing and improperly assuming the role of an advocate by not only cross-examining this witness, but dominating the questioning?

Appellant's Brief at 2.

Our review of the PCRA court's denial of relief is limited to whether "the PCRA court's findings . . . are supported by the record and free from legal error." *Commonwealth v. Duffey*, 889 A.2d 56, 61 (Pa. 2005). The PCRA court's findings and the evidence of record is "viewed in the light most favorable to the prevailing party"—here, the Commonwealth. *Id.* The PCRA

court's credibility determinations, "when supported by the record, are binding on this Court." ***Commonwealth v. Small***, 189 A.3d 961, 971 (Pa. 2018).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless an exception to timeliness applies. 42 Pa.C.S.A. § 9545(b)(1). The one-year time limitation can be overcome if a petitioner (1) alleges and proves one of the three exceptions set forth in Section 9545(b)(1)(i)-(iii) of the PCRA, and (2) files a petition raising this exception within one year of the date the claim could have been presented. ***See*** 42 Pa.C.S.A. § 9545(b)(2). "The PCRA's time restrictions are jurisdictional in nature. Thus, if a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." ***Commonwealth v. Chester***, 895 A.2d 520, 522 (Pa. 2006) (overruled on other grounds by ***Commonwealth v. Small***, 238 A.3d 1267 (Pa. 2020)).

In this case, Appellant's judgment became final in late 1990, the deadline for appealing his judgment of sentence to the United States Supreme Court. The present petition is facially untimely, having been filed almost three decades after the expiration of the time for filing a timely PCRA petition. ***Id.***

Appellant argues that his petition is timely under the newly discovered facts exception in Section 9545(b)(1)(ii). At several points in his brief, however, Appellant appears to confuse the *newly*-discovered facts exception

in section 9545(b)(1)(ii) with the *after*-discovered evidence basis for relief delineated in 42 Pa.C.S.A. § 9543(a)(2). Therefore, before reaching the substance of Appellant's claims, we briefly distinguish the newly-discovered exception from the after-discovered evidence doctrine.

The *newly*-discovered facts exception in section 9545(b)(1)(ii) requires the petitioner to plead and prove that (1) the facts upon which the claim is predicated were unknown, and (2) these unknown facts could not have been ascertained by the exercise of due diligence. ***Id.***; ***see also Commonwealth v. Burton***, 158 A.3d 618, 638 (Pa. 2017). "The focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned of the new fact(s) earlier with the exercise of due diligence." ***Commonwealth v. Williams***, 35 A.3d 44, 53 (Pa. Super. 2011). Further, the "fact" on which the petitioner predicates his claim to an exception to the time-bar must bear some logical connection to a plausible claim for relief. ***See Commonwealth v. Robinson***, 185 A.3d 1055, 1062 (Pa. Super. 2018) (*en banc*).

The *after*-discovered evidence doctrine embodied in section 9543(a)(2)(vi) provides that when a petition is otherwise timely, the petitioner must prove that (1) the exculpatory evidence has been discovered after trial

and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **Burton**, 158 A.3d at 629.

In his first argument, Appellant claims that the PCRA court erred when it dismissed his *after*-discovered evidence claim that former Detectives Santiago and Jastrzembski coerced witness D'Angelo White to provide a false statement and testimony. Appellant offered the brother—Shawn White—of the now-deceased witness to recount what the dead man allegedly told him.

In the PCRA court, Appellant did not explicitly address whether his petition was timely under the newly-discovered evidence exception in Section 9545(b)(1)(ii). He only argued that Shawn White's statement satisfied the after-discovered evidence doctrine in Section 9543(a)(2)(vi):

> Shawn White's statement literally came out of left field. It surfaced because his mother and brother were upset that her son had been part of providing critical evidence leading to the conviction of Anthony Chance, and this evidence was false. She finally felt like she and her son Shawn should right this wrong. She, thus, came forward along with her son Shawn White, who knew much more about what police coercion occurred with her son…
>
> Further, the misconduct of Detective Santiago has only recently come out after his misconduct in the trial of Anthony Wright was exposed … He has recently been indicted in that case for his role in coercing a statement and falsely implicating him in a murder.
>
> This is not evidence that could have been obtained to the exercise of due diligence. D'Angelo White is dead and the misconduct of Detectives Santiago, Cimino and McNesby was hidden for decades.

- 9 -

Amended PCRA Petition, 7/7/22, at 6.

The PCRA court did not address whether the petition was timely under Section 9545(b)(1)(ii). Instead, it dismissed the petition on the grounds that Shawn White's testimony during the PCRA evidentiary hearing was incredible and the newly discovered evidence (the assault on D'Angelo White by the police detectives) would not have changed the verdict. Similarly, the Commonwealth does not argue in this Court that the petition was untimely; it contends instead that Shawn White's testimony during the PCRA hearing was incredible and that his testimony would not have changed the verdict.

For two reasons, we will assume for purposes of this memorandum that the petition is timely under Section 9545(b)(1)(ii). First, it is reasonable to assume that until Appellant filed the present petition in 2020, he did not have access to Shawn White, because (1) Shawn was the brother of a Commonwealth witness who had given damaging testimony against Appellant during trial, and (2) Appellant had no reason to know that police detectives allegedly had coerced D'Angelo White into giving a statement against Appellant or that D'Angelo White had told Shawn White about the police detectives' conduct. Second, neither the PCRA court nor the Commonwealth contends that the present petition fails to satisfy Section 9545(b)(1)(ii).

Even though we assume that the present petition is timely, the substance of Appellant's argument does not warrant relief. The gist of this argument is that Shawn White's testimony concerning the police detectives'

- 10 -

coercive conduct against D'Angelo White constitutes after-discovered evidence that entitles Appellant to a new trial. We agree with the PCRA court that Shawn White's testimony, even if believed, would not have changed the outcome of this case, because the evidence against Appellant was overwhelming. **Burton**, 158 A.3d at 629 (claim of after-discovered evidence fails unless, *inter alia*, it would likely compel a different verdict).

D'Angelo White's trial testimony set forth three essential points: (1) Appellant and Jeffrey McCants fought over Appellant's chain; (2) after the fight, Appellant chased Jeffrey McCants and the victim down the street with a rifle; and (3) when Appellant did not catch either during the chase, he returned and stated "he going to kill [Jeffrey McCants] for taking his chain." N.T. 10/12/1988, at 112-17, 142. These points were established not only by D'Angelo White but by other witnesses, including Appellant himself.

Multiple witnesses, including Terry Bellamy, Isaac McCants and Appellant, all confirmed that Appellant and Jeffrey McCants fought over Appellant's chain before the shooting. N.T. 10/13/1988, at 190-93, 279-80; 10/14/1988, at 390. Bellamy stated to police that he saw Appellant running in the area with a rifle in his hand after the fight. N.T. 10/14/1988, at 326. Appellant testified that he retrieved his rifle after the fight and was outside. *Id.* at 422. Finally, eyewitness Ernest Hammond testified that when Appellant returned to his apartment after the fight, he repeatedly said, "he was going to get him." N.T. 10/13/1988, at 222. The identification of the shooter was

not at issue, since Appellant confessed to police and admitted at trial that he fatally shot the victim. Furthermore, the detectives Appellant now accuses of misconduct did not testify at trial.

The only points of dispute during trial were Appellant's intent and the degree of Appellant's homicide. Appellant's own statement and testimony, however, were alone sufficient to prove his intent to kill. "A jury may infer the intent to kill based on the accused's use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Baker***, 201 A.3d 791, 795-96 (Pa. Super. 2018) (cleaned up). Appellant admitted he shot the victim four times, including a shot to the chest. N.T. 10/12/1988, at 106; 10/13/1988, at 302-05, 311. He admitted that he shot the victim after he got angry during an argument. N.T. 10/14/1988, at 391. He verified that he sought out the victim and engaged in an argument with him while he was in possession of a firearm. ***Id.*** at 408-11. Additionally, he fled the scene and disposed of the firearm in the Schuylkill River. ***Id.*** at 414-15.

There was also substantial evidence that disproved any self-defense theory or lesser degree of homicide. After the men took Appellant's chain, he went to his apartment, retrieved a rifle, and sought the victim at the corner where he lived. N.T. 10/14/1988, at 390-91, 403; ***see Commonwealth v. Jones***, 271 A.3d 452, 460 (Pa. Super. 2021) (evidence sufficiently disproved defendant's self-defense claim when testimony established that Jones could have left the bar after the victim threatened him but he chose to return).

Further, Appellant told police that he initially fired one shot and then decided to fire three additional shots. N.T., 10/14/1988, at 391. Eyewitness Ernest Hammond corroborated this testimony, stating that Appellant fired one shot, the victim fell over, and Appellant fired three additional shots while standing over him. N.T. 10/13/1988, at 233-34; *see Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (defendant's imperfect self-defense claim was meritless because he used more force than necessary to protect himself when he stabbed the victim nineteen times in the torso and back).

Appellant would have us conclude that the outcome of trial would have changed had D'Angelo White not testified in accordance with his allegedly coerced statement. The evidence summarized above demonstrates otherwise. Even if D'Angelo White never testified, there was overwhelming evidence of Appellant's guilt, and the outcome of trial would have been the same. Thus, Appellant's claim that Shawn White's testimony concerning the detectives' misconduct does not constitute after-discovered evidence that entitles Appellant to relief.

Next, Appellant argues that the police detectives' alleged conduct entitles him to relief under *Brady*. We disagree.

To establish a *Brady* violation, the petitioner must show: (1) the prosecution suppressed the evidence, either willfully or inadvertently; (2) the evidence is favorable to the defendant; and (3) the evidence is material. *Commonwealth v. Birdsong*, 24 A.3d 319, 328 (Pa. 2011). "Evidence is

material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Id.* "To be entitled to a new trial for failure to disclose evidence affecting a witness' credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." *Commonwealth v. Dennis*, 17 A.3d 297, 308-09 (Pa. 2011).

Appellant's *Brady* argument fails for the same reason that his after-discovered evidence claim fails. There was overwhelming evidence of Appellant's guilt and Shawn White's testimony concerning the detectives' misconduct would not have resulted in a different outcome. *Birdsong*, *Dennis*, *supra*.

Finally, Appellant argues that the PCRA court's questioning of witness Shawn White improperly shifted into advocacy. Brief for Appellant, at 30-37. We disagree. The court was allowed to ask questions of a witness, and Appellant failed to establish anything unduly prejudicial in the court's questioning here.

To begin, Appellant only raised objections to two questions during Shawn's testimony and did not explain the basis for either objection. N.T. 12/9/2024, at 31, 87. Appellant never claimed lack of impartiality, the

argument he attempts to raise on appeal. Nor did he ask the court to recuse itself. Thus, he has waived his challenge to the court's alleged lack of impartiality. Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

In any event, the record facially refutes Appellant's claim of bias. "Where the interest of justice so requires, the court may examine a witness regardless of who calls the witness." Pa.R.E. 614(b). "[W]here an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination[.]" *Commonwealth v. Roldan*, 572 A.2d 1214, 1215 (Pa. 1990). "A new trial is required…only when the trial court's questioning is prejudicial, that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the Appellant of a fair and impartial trial." *Commonwealth v. Manuel*, 844 A.2d 1, 9 (Pa. Super. 2004).

Here, the PCRA court was within its discretion in questioning Shawn White about the date on which he learned the alleged new facts and the underlying facts that Appellant relied upon to support his after-discovered evidence and *Brady* claims. The information was plainly relevant to the requisite elements of both claims. *See Small*, 189 A.3d at 971 (after-discovered evidence claim requires petitioner to act with due diligence and that the evidence be likely to result in a different verdict); *Birdsong*, 24 A.3d at 328 (reciting materiality prong). Moreover, the record demonstrates

absence of prejudice to Appellant. The PCRA court was the fact-finder at the evidentiary hearing. *See Commonwealth v. Seabrook*, 379 A.2d 564, 567 (Pa. 1977) (recognizing "especially when…sit[ting] as a finder of fact," the judge need not remain a quiet and passive "mechanical instrument into which the parties feed testimony"). Moreover, as discussed above, the record demonstrates that Appellant did not suffer prejudice. The court's manner of questioning did not override the overwhelming evidence of Appellant's guilt.

For these reasons, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/17/2026